UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CALVESTER HARRINGTON,

      Plaintiff,

vs.
                               Case No.11-cv-14076
                               HON. GERSHWIN A. DRAIN

ARAMARK CORRECTIONAL
SERVICES, LLC.*,*

      Defendant.

_____/

OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#25]

### I.  INTRODUCTION

This lawsuit arises out of a slip and fall suffered by the Plaintiff while incarcerated in the Oakland County Jail. Plaintiff states he has a viable claim of negligence because Defendant breached its duty of due care to Plaintiff in the operation and maintenance of the Food Service area located in the jail. This Michigan state law claim of negligence is presently before the Court on Defendant's FED. R. CIV. P. 56(c) Motion for Summary Judgment. Although Plaintiff's response to the Motion for Summary Judgment was dilatory, for the reasons stated below, the Court will allow it. Furthermore, the Defendant's Motion for Summary Judgment is GRANTED. This Opinion and Order sets forth the Court's ruling.

### II.  FACTUAL BACKGROUND

Defendant entered into a Professional Service Contract ("Agreement") with the

Oakland County Jail to provide food services to inmates within the jail. The Agreement outlined the responsibilities of the Oakland County Jail and the Defendant. For example, the Agreement provided that Defendant was responsible for daily cleaning and all housekeeping for the food service area; while the Oakland County Jail would only perform janitorial service outside of the kitchen facilities or food service area.

On or about November 29, 2008, Plaintiff, while incarcerated in the Oakland County Jail, slipped and fell while he was working as a Trusty[1] in the food service area. Plaintiff worked at the dishwashing station removing food trays from the dishwasher. Plaintiff would take two to three steps with the trays between the dishwasher and the shelving unit in order to stack the trays on the shelves. At his deposition, Plaintiff testified that days before his slip and fall accident, he observed water and food debris on the floor. However, he didn't mention the condition of the floor to Defendant because it was "evident" and "obvious." Plaintiff further testified that, on November 29, 2008, after working for about an hour, he slipped and fell on water and food debris injuring his right knee. Also, Plaintiff's fiancé, Valerie Luckett, testified during her deposition that Plaintiff informed her that on the day he was injured, he slipped a couple of times before he actually fell.

Plaintiff filed a lawsuit in Michigan state court on August 19, 2011, alleging common-law negligence. Defendant removed to this Court based on diversity of citizenship and moved for summary judgment under FED. R. CIV. P. 56. For the reasons stated below, Defendant's motion is GRANTED.

---

[1] A Trusty undergoes a selection process where standard selection criteria are used to designate certain inmates as trustees within the total jail system. Some of the criteria used for selection include, but are not limited to: no escape charges or a past history of escape from a secure facility, no assaultive felony holds, and no pattern or institutional behavior problems. All inmate requests for Trusty status are reviewed based on the criteria set forth in the Trusty Selection and Monitoring process.

## III. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B. Notice to Strike Memorandum Opposing Summary Judgment

In accordance with Local Rule 7.1(e)(B), a memorandum in opposition to any motion is to be filed and served within 21 days after the motion was served. Applying that rule to this matter, Plaintiff's memorandum in opposition to Defendant's summary judgment motion was filed some 14 days out of time. On or about December 31, 2012, Plaintiff's counsel advised the Court's clerk that he intended to oppose the motion and would file a response within the next week. However, Plaintiff did not file his response until January 14, 2013. On January 22, 2013, Defendant filed a Notice of Objection to Plaintiff's Improper Late Response to Defendant's Motion for Summary Judgment. Contained within Defendant's Notice of Objection was an improper[2] request for the Court to strike Plaintiff's late response and for the Court to enter an order granting Defendant's Motion for Summary Judgment. *See* Dkt. No. 29.

---

[2] Defendant should have filed a Motion to Strike to allow for proper briefing by both parties.

Courts ordinarily prefer to decide motions after duly considering the position advanced by each party. The Court is not precluded from deciding a dispositive motion without considering input from a party who was afforded an opportunity, but failed, to timely apprise the Court of its arguments. In this matter, because a proper Motion to Strike was not filed, the Court has not been apprised of the reasons behind Plaintiff's failure to file a timely memorandum in opposition to Defendant's summary judgment motion. As a practical matter, however, the Court had not begun to consider Defendant's summary judgment motion before Plaintiff filed his opposing memorandum, and Plaintiff's untimely filing, thus, did not delay resolution of the motion. Defendant has not asserted, nor does it appear that it could articulate, any prejudice stemming from Plaintiff's untimely filing. *See* Dkt. No. 28. Given the Court's reluctance to decide a dispositive motion without considering input from all affected parties, the Court is not inclined to strike an untimely filing that resulted in no delay in the proceedings.

### C. Motion for Summary Judgment

Generally, a federal court sitting in diversity applies the substantive law of the forum state. *See City of Wyandotte v. Consolidated Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001). To prevail on a negligence claim under Michigan law, a plaintiff must show: (1) that the defendant owed a legal duty to the plaintiff; (2) that the defendant breached or violated the legal duty owed to the plaintiff; (3) that the defendant's breach of duty was a proximate cause of the damages suffered by the plaintiff; and (4) that the plaintiff suffered damages. *Riddle v. McLouth Steel Prod. Corp.*, 440 Mich. 85, 93 (Mich. 1992); *see also Babula v. Robertson*, 212 Mich. App. 45, 48 (1995).

Michigan law recognizes a duty of care arising solely from the possession of land,

or premises liability. *See Kubczak v. Chem. Bank & Trust Co.*, 456 Mich. 653, 658 (Mich. 1998) ("Premises liability is conditioned upon the presence of possession and control, not necessarily ownership" of the land.) In a premises liability action, "liability emanates merely from the defendant's duty as an owner, possessor or occupier of land." *Laier v. Kitchen*, 266 Mich. App. 482, 493 (Mich. App. 2005). Further, the duty a premises owner owes an individual on his property, or on property he is deemed to be in possession and control of, depends on the individual's status. An individual's status falls into three categories: (1) trespasser, (2) licensee, and (3) invitee. *James v. Alberts*, 464 Mich. 12, 19 (2001).

Plaintiff argues that he fell because the floor was slippery due to the water and food debris present on the floor. Before entertaining this theory, the Court must determine: (1) whether Defendant was in possession or control of the food service area and (2) what duty, if any, Defendant owed to the Plaintiff as a licensee or an invitee.

### 1.  Aramark as Owner or Possesor of the Premises of Oakland County Jail

Both the Defendant and Plaintiff argue that the relevant facts to determine if Defendant was in possession and control of the food service area are found in the language of the Agreement. Each party presents facts from the Agreement that they contend support their positions of who was in possession and control of the food service area. Because reasonable minds could differ on the issue of possession and control, the Court holds that there is a genuine issue of material fact as to whether Defendant was in possession or control of the food services area.

Under premise liability theory, Plaintiff must first show that the Defendant had possession and control of the food services area at the time of his injury. In *Orel v. Uni-Rak*

*Sales Co.*, 454 Mich. 564, 568 (1997), the Michigan Supreme Court, quoting *Merritt v. Nickelson*, 407 Mich. 544, 552-553 (1980), defines "possession and possessor" as follows:

> Premises liability is conditioned upon the presence of both possession and control over the land. This is so because 'The man in possession is in a position of control, and normally best able to prevent any harm to others.' Michigan has consistently applied this principle in imposing liability for defective premises. Our application of this principle . . . imposes liability for injuries occurring to trespassers, licensees, and invitees upon those who are "possessors" of the land. A "possessor" is defined as:
>
>> '(a) a person who is in occupation of the land with intent to control it or
>> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
>> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).'
>
> Ownership alone is not dispositive. Possession and control are certainly incidents of title ownership, but these possessory rights can be "loaned" to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility.

The person who exercises dominion and control over property is normally the best person to prevent harm to others. *Derbabian v. Mariner's Pointe Assoc. L.P.*, 249 Mich. App. 695 (2002). Defendant maintains that the Oakland County Jail was in possession and control of the food service area because "[Defendant] merely performed professional food services pursuant to an agreement with Oakland County." *See* Def.'s Mot. for Summ. J., Dkt. 25, ¶ 8.

Furthermore, Defendant argues that it was not in possession of the food service area

because: (1) Defendant was only contracted to provide meal services to inmates; (2) Oakland County Jail was to provide preventative maintenance, equipment repairs, and replacements for County owned equipment, (3) Oakland County Jail was responsible for maintaining kitchen equipment and appliances, extermination services, and removal of trash from the food service area, and (4) Oakland County Jail retained control over the inmates who were assigned to the kitchen.

Alternatively, Plaintiff contends that Defendant was granted exclusive rights to provide meal services at the Oakland County Jail. Moreover, Plaintiff argues that Defendant was responsible for the daily cleaning and housekeeping of the food service area, while the Oakland County Jail was only responsible for the janitorial services outside of the kitchen facilities. Plaintiff points to language in the Agreement in Paragraph 7.8 that states the Defendant shall "return" the food services premises back to the Oakland County Jail as evidence that Defendant was in possession and control of the food services area.

Both parties present questions of fact as to which party was in possession and control of the premises. Therefore, this Court cannot conclude as a matter of law that Defendant was not in possession and control of the food services area at the time of Plaintiff's injury.

### 2. Duty to Plaintiff as a Licensee or Invitee

However, even if the Court were to conclude that Defendant had possession and control of the food service area, Plaintiff's claim ultimately fails, as a matter of law, because Defendant did not breach its duty to Plaintiff. Defendant argues that Plaintiff was at best a licensee to whom it only owed a duty to warn of any known hidden dangers. Conversely, Plaintiff maintains that because he had achieved Trusty status and was working in the food service area, there was a mutual benefit between the parties and he should be considered

an invitee. The Court agrees with the Defendant that Plaintiff was a licensee.

A licensee enters another's land with the possessor's consent. *James*, 464 Mich. at 19. The landowner owes a licensee a duty to warn of any hidden dangers the owner knows or has reason to know of, but only to the extent the licensee does not know or have reason to know of the dangers involved. *Id.* The landowner does not, however, owe a duty of inspection or affirmative care to make the premises safe for the licensee. *Id.*

An invitee is a person who enters upon the land of another upon an invitation. *Id.* Generally, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. *See Lugo v. Ameritech Corp.*, 464 Mich. 512, 516 ( 2001). "The owner's reason for inviting persons onto the premises is the primary consideration when determining the visitor's status: In order to establish invitee status, a plaintiff must show that the premises were held open for a *commercial* purpose." *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 604 (2000) (emphasis in original).

The landowner must not only warn an invitee of any known dangers, but must also make the premises safe. *James*, 464 Mich. at 19-20. The landowner has a duty to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. *Id.*

"It is the owner's desire to foster a commercial advantage by inviting persons to visit the premises that justifies imposition of a higher duty. In short, . . . the prospect of pecuniary gain is a sort of quid pro quo for the higher duty of care owed to invitees." *Stitt* 462 Mich. at 604. The facts in this case indicate that the Plaintiff was not invited to work in the food service area by the Defendant. However, Defendant did consent to Plaintiff working there

by virtue of the Agreement between Defendant and Oakland County Jail. "Unlike a person who enters a jail, e.g., to meet with an inmate, make a delivery, or apply for a job, an inmate does not visit a jail as a potential invitee. Instead, inmates are *legally compelled* to be there." *Brown v. Genesee County Bd. of Comm'rs*, 464 Mich. 430, 439 (2001) (emphasis in original). Moreover, there is no indication that Defendant received a "commercial advantage" by allowing Plaintiff to work in the kitchen area. Therefore, Plaintiff was a licensee and Defendant owed him a duty to warn him of any hidden dangers on the premises.

The danger in this case, specifically, water and food debris on the floor, was – by Plaintiff's own repeated admissions – obvious and not hidden a few days before his fall. Specifically, Plaintiff stated in his deposition:

> Q: Did you tell them [Defendant], before your slip and fall, hey, there is water and food debris on the floor by the dishwasher?
>
> A: Well, it's evident. You have to see it.
>
> Q: It's obvious on the floor?
>
> A: It's obvious.
>
> Q: Did you point it out to them [Defendant]?
>
> A: No. And they never said be careful of it either.
>
> Q: They didn't have to tell you to watch out for it because you saw it right?
>
> A: Right.
>
> Q: So it was obvious to you there was food and water and debris all over the floor?
>
> A: Right. And some of it came from under the dishwasher which

> we said how come all this water is coming out.

*See* Def.'s Mot. for Summ. J., Ex. B, Harrington Dep. Tr., Ex. B, pgs. 31-32. Plaintiff also told his fiance that on the day he was injured, there was a lot of water on the floor. He also told her that he almost slipped on the floor a couple of times before he actually fell. *Id.,* Luckett Dep. Tr., Ex. H, pg. 14.

There is no duty to warn a licensee about a danger of which he already knows or should know. *See Stitt*, 462 Mich. at 596. Plaintiff's knowledge about the water and debris on the floor days before the accident and on the day of the accident show that the condition of the floor was not new and that it was "evident" and "obvious" and not hidden. *See* Def.'s Mot. for Summ. J., Ex. B, pg. 31. Indeed, Plaintiff agreed that anyone walking through – who was paying attention – would have noticed the food and water on the floor. *Id*, pg. 18. Moreover, Plaintiff was on notice that the floor was slippery the day of the fall because he slipped a couple of times before he actually fell. Therefore, because Defendant had no duty to warn Plaintiff about a danger that was not hidden, this argument also fails.

Under Michigan law, Plaintiff has not established a prima facie case of negligence. Defendant's duty to warn Plaintiff extended only to "hidden dangers" that Plaintiff did not know or have reason to know of, and did not extend to dangers Plaintiff was fully aware of, such as the water and food debris present on the floor. Thus, Defendant did not breach its duty to Plaintiff. Plaintiff has failed to present sufficient evidence to establish a question of fact exists for trial. Therefore, Defendant is entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment [#25] is GRANTED.

SO ORDERED.

Dated: February 20, 2013         /s/Gershwin A Drain
                                 GERSHWIN A. DRAIN
                                 United States District Court Judge